UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES EDWARD GEARHART, JR,<br><br>Defendant. | Case No.  6:23-po-00079-HBK-1<br><br>ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS[1]<br><br>ORDER DENYING REQUEST FOR EVIDENTIARY HEARING<br><br>(Doc. No. 8) |

On January 4, 2023, Defendant Charles Edward Gearheart ("Gearheart" or "Defendant") was issued a bailable[2] citation for violation of 36 C.F.R. § 2.4(g), carrying or possessing a weapon, trap or net in violation of applicable Federal and State laws, specifically California Penal Code § 25610,[3] stemming from an incident that occurred on Northside Drive near Superintendent Straight in Yosemite National Park. (*See* Doc. No. 1, "Citation").   The Court previously denied

---

[1] This motion was referred by the district court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rules 302(b)(3) and 303(a).  (E.D. Cal. 2023).

[2] In lieu of appearance, Gearheart had the option to pay a $250 fine and $30 processing fee to the Central Violation Bureau.  (Doc. No. 1 at 1).

[3] Cal. Penal Code § 25610 provides: "(a) Section 25400 shall not be construed to prohibit any citizen of the United States over the age of 18 years who resides or is temporarily within this state, and who is not prohibited by state or federal law from possessing, receiving, owning, or purchasing a firearm, from transporting or carrying any pistol, revolver, or other firearm capable of being concealed upon the person, provided that the following applies to the firearm: (1) The firearm is within a motor vehicle and it is locked in the vehicle's trunk or in a locked container in the vehicle; (2) The firearm is carried by the person directly to or from any motor vehicle for any lawful purpose and, while carrying the firearm, the firearm is contained within a locked container."

Defendant's Motion to Dismiss the citation under the Second Amendment.  (*See* Doc. No. 31).  Gearhart filed a pretrial motion to suppress all evidence and statements obtained as a result of the search of the vehicle in which Defendant was a passenger and in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966).  (Doc. No. 10 at 1, "Motion").  The Motion also includes a request for an evidentiary hearing.  (*Id*. at 2).  The Government filed an opposition to Gearhart's Motion (Doc. No. 21) and Gearhart filed a Reply (Doc. No. 23).  In support, the Government refers the Court to two video exhibits—the body worn camera recordings for Rangers Stephany Hesse and Jacob Blade.  (Exhibits 2 and 3 to Doc. No. 21).   As more fully addressed below, the Court denies Defendant's request for an evidentiary hearing and his Motion to Suppress.

## REQUEST FOR EVIDENTIARY HEARING

"An evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *Walczak*, 783 F.2d at 857.  "Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court." *Id*.   "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."  *Franks v. Delaware*, 438 U.S. 154, 171 (1978)

In his Motion to Suppress, Gearheart "respectfully requests an evidentiary hearing on the issues raised in this motion" without specifying any contested issues of fact going to the validity of the search.  (Doc. No. 10 at 2).  The Government, in a footnote to its Opposition, stated its position that a hearing is not necessary given that there are no "material disputes," and that any "minor disagreements as to facts" concerning the timing of events can be verified through review of the body worn camera footage.  (Doc. No. 21 at 29 n. 27).

As a preliminary matter, the Court notes that at the January 10, 2024 hearing on the Motion to Dismiss in this case the Parties appeared to agree that no evidentiary hearing was necessary, unless the Court found a contested issue of fact upon reviewing the body worn camera

footage.  The Parties also stipulated to the authenticity of the Rangers' body worn camera footage.  Further, neither Defendant's Motion nor his Reply sets forth any contested issues warranting an evidentiary hearing.  (*See* Doc. Nos. 10, 23).  The Reply states only "Mr. Gearheart respectfully renews his request for an evidentiary hearing in this matter." (Doc. No. 23 at 11).  Given that the Parties have stipulated to the authenticity of the body worn camera footage and Defendant does not meaningfully dispute the facts set forth in Ranger Hesse's police report, the Court finds there are no contested issues of fact pertaining to the Motion to Suppress and denies the request for an evidentiary hearing.

## FACTUAL BACKGROUND AND FINDINGS

While on patrol at approximately 1225 hours on January 4, 2023, Yosemite National Park Ranger Stephany Hesse heard a call from dispatch of an off-duty ranger reporting an older model silver Lexus driving recklessly at Swinging Bridge.  (Ex. 1 to Doc. No. 21 at 1).  Approximately one minute later, Hesse observed a Lexus GS with California plates displaying expired registration pass her on Northside Drive.  (*Id*.).  Shortly after pulling in behind the vehicle, the driver of the Lexus made a sudden stop at the first pullout on Superintendent Straight.  (*Id*.).  Ranger Hesse parked behind the Lexus and approached on foot as the occupants of the vehicle attempted to exit.  (*Id*.).

Ranger Hesse contacted the driver, later identified as William Gearheart ("William"), and explained the reason for the stop.  (Exhibit 2 to Doc. No. 21 at 00:32-00:56).  Ranger Hesse then asked William for a driver's license, proof of insurance, and registration.  (*Id.* at 1:06-1:08).  After some back and forth in which William indicated he did not have current registration, he ultimately produced a copy of an expired registration.  (*Id*. at 1:08-2:12.)  As Ranger Hesse reached to take the document and began examining it, she asked, "Any firearms, large knives or weapons in the vehicle?"  William answered, "no." (*Id.* at 2:16.)  A few moments later, having "observed a strong odor of burnt marijuana emerging from the vehicle" Ranger Hesse asked, "any marijuana in the vehicle?" (*Id.* at 2:22; Ex. 1 at 2).  Before William could answer, Defendant Gearheart, seated in the back seat, opened his door and asked Ranger Hesse, "Is your bodycam on?"  (Ex. 2 at 2:24-2:33).  Ranger Hesse answered "yes" and turned back to William, who stated

3

1  they had "a little bit of marijuana" in the car.  (*Id.* at 2:24-2:38).  Ranger Hesse explained that a
2  small amount of marijuana would not be "a big deal" but inquired as to the presence of hard drugs
3  and asked William when was the last time he smoked marijuana and whether he was safe to drive.
4  (*Id*. at 2:39-2:54).  After William stated he was safe to drive, Hesse returned to her vehicle, called
5  for backup so that she could conduct a vehicle search and ran William's driver's license,
6  confirming that it was expired.  (*Id*. at 2:54-3:48).  After additional Rangers arrived on the scene,
7  Ranger Hesse briefed them on the issues presented by the stop and the basis for the search,
8  including the "smell of marijuana" in the car.  (*Id*. at 5:32-7:03).

9        The adult occupants of the car—William, Gearheart, and William's significant other—
10  were asked one by one to step out of the vehicle, along with William's young daughter.  (Ex. 3 to
11  Doc. No. 21 at 6:12-7:00).  As Gearheart awaited instructions to exit the vehicle, he placed a
12  green fanny pack over his shoulder, but Ranger Hesse instructed him to leave it in the car.  (Ex. 2
13  at 10:23-10:25).  Ranger White frisked the adult occupants of the car, finding a "concealed fixed
14  blade knife" under William's sweatshirt.  (Ex. 1 at 3).  White then searched the vehicle and found,
15  in the front passenger side of the vehicle several empty beer cans and a marijuana glass bong with
16  marijuana residue.  (*Id*.).  White also found a glass bowl with marijuana residue and a plastic bag
17  of marijuana in the front of the car.  (*Id*.).  In the back seat, White found more open beer cans, and
18  in the green fanny pack found a loaded .38 special LCR Ruger revolver and ammunition.  (*Id*.).
19  In the trunk of the vehicle, White found, among other things, a large folding knife with an eight-
20  inch blade and a jar of marijuana.  (*Id*.).  Ranger Hesse issued a citation to Defendant for violation
21  of 36 C.F.R. § 2.4(g) and a violation notice to William for 36 C.F.R. § 4.2 (driving without a
22  valid license) as well as warnings for the expired registration, lack of proof of insurance, open
23  container of alcohol, and possession of marijuana.  (*Id*.).

## LEGAL STANDARD

25        The Fourth Amendment protects "[t]he right of the people to be secure in their persons,
26  houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend.
27  IV.  When a search is conducted without a warrant, the analysis begins "with the basic rule that
28  'searches conducted outside the judicial process, without prior approval by judge or magistrate,

are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  For example, because there is a lesser expectation in the privacy of one's vehicle than of one's person, a warrantless search of a vehicle may be conducted if there is probable cause to believe the vehicle contains contraband.  *United States v. Ross*, 456 U.S. 798, 799 (1982).  Searches incident to lawful custodial arrests are also excepted from the Fourth Amendment's warrant requirement.  *United States v. Robinson*, 414 U.S. 218, 235 (1973).  The government bears the burden of establishing that a warrantless search was reasonable and did not violate the Fourth Amendment.  *United States v. Carbajal,* 956 F.2d 924, 930 (9th Cir. 1992), *cert. denied,* 510 U.S. 900 (1993) (citations omitted).  Under the exclusionary rule, evidence obtained in violation of an individual's Fourth Amendment rights, including any "'fruit of the poisonous tree,'" is excluded from a criminal trial.  *United States v. Cervantes*, 703 F.3d 1135, 1138-39 (9th Cir. 2012); *see also Alderman v. United States*, 394 U.S. 165, 171 (1969) ("The exclusionary rule . . . excludes from a criminal trial any evidence seized from the defendant in violation of his Fourth Amendment rights.  Fruits of such evidence are excluded as well." (citations omitted)).

"Whether an evidentiary hearing is appropriate rests in the reasoned discretion of the district court," and "[a]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in issue." *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986) (citations omitted).

**DISCUSSION**

Gearheart moves to suppress all evidence seized during the search of the vehicle in which he was a passenger as well as the statements "obtained as a result of (1) the warrantless search of the vehicle . . . and (2) violation of *Miranda v. Arizona*, 384 U.S. 436 (1966)." (Doc. No. 10 at 1).  Gearheart does not dispute the validity of the initial law enforcement stop but contends that rangers improperly extended the stop through extraneous questioning and lacked probable cause to search the vehicle.

5

**A. Whether the Rangers' Investigation Exceeded the Scope of Reasonable Suspicion**

Under the Fourth Amendment, a seizure for a traffic stop is "a relatively brief encounter," "more analogous to a so-called *Terry* stop than to a formal arrest." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (quoting *Knowles v. Iowa*, 525 U.S. 113, 117 (1998) (alterations omitted)). To be lawful, a traffic stop must be limited in its scope: an officer may "address the traffic violation that warranted the stop," make "ordinary inquiries incident to the traffic stop," and "attend to related safety concerns." *Id*. at 354–55 (quotations and alterations omitted). The stop may last "no longer than is necessary to effectuate" these purposes and complete the traffic "mission" safely. *Id*. at 354–55 (citations omitted); *see Rodriguez*, 575 U.S. at 355 (officers during traffic stops may check licenses, check for outstanding warrants against the driver, and inspect registration and insurance); *see also Arizona v. Johnson*, 555 U.S. 323, 333 (2009) ("An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."). A stop "may be extended to conduct an investigation into matters other than the original traffic violation" so long as "the officers have reasonable suspicion of an independent offense." *United States v. Landeros*, 913 F.3d 862, 867 (9th Cir. 2019).

Here, it is not reasonably in dispute that Ranger Hesse had a proper basis for her initial stop of the Lexus based on the expired registration and the radio report of an older-model Lexus in the area driving erratically. During the stop, Ranger Hesse was permitted to ask William basic questions, such as whether he had identification, whether he had any weapons in the vehicle, and could check for outstanding warrants. *See United States v. Taylor*, 60 F.4th 1233, 1239 (9th Cir. 2023) *cert. denied*, —— S. Ct. ——, Feb. 20, 2024. Such questions are "ordinary inquiries incident to a traffic stop made as part of ensuring that vehicles on the road are operated safely and responsibly, or else are negligibly burdensome precautions that an officer may take in order to complete his mission safely." *Id*. (internal citations omitted).

Further, after smelling the odor of burnt marijuana, Ranger Hesse was justified in investigating further to determine whether William was safe to drive and whether the occupants

6

of the car were engaged in any drug-related offenses. *See People v. Fews*, 27 Cal. App. 5th 553 (2018) (noting that "[d]riving a motor vehicle on public highways under the influence of any drug . . . or while in possession of an open container of marijuana . . . are not acts 'deemed lawful'" by California's legalization of recreational marijuana, and thus a smell of recently burnt marijuana in a vehicle warranted further investigation.); *see also State v. Randy J.*, 150 N.M. 683, 693 (N.M. Ct. App. 2011) ("We conclude that the odor of marijuana emanating from the vehicle combined with the odor of marijuana on [Appellant's] person provided objective, articulable facts that would lead a reasonable officer to suspect that [Appellant] was driving under the influence.").

      Gearheart argues that Ranger Hesse impermissibly extended the stop when she asked him about the presence of weapons in the car. (Doc. No. 10 at 9). However, the video of the encounter reflects that the Ranger's question was asked while William handed her his expired registration, and there was no extended colloquy on the subject; William simply answered "no." (Ex. 2 at 2:14-2:17). Thus, Hesse's questions regarding weapons did not "measurably extend the duration of the stop." *Johnson*, 555 U.S. at 333. Moreover, as the Supreme Court noted in *Johnson*, "traffic stops are "especially fraught with danger to police officers . . . the risk of a violent encounter in a traffic-stop setting stems not from the ordinary reaction of a motorist stopped for a speeding violation, but from the fact that evidence of a more serious crime might be uncovered during the stop." 555 U.S. at 330-31. Attending to "safety concerns" involved in completing a traffic stop are within the scope of a routine stop. *Rodriguez*, 575 U.S. at 354-55. And as noted above, the Ninth Circuit specifically held in *Taylor*—for which the Supreme Court recently denied a petition for writ of certiorari—that asking whether a suspect has any weapons is one of the "ordinary inquiries" that officers may ask during a routine traffic stop. 60 F.4th at 1239.

      As to Hesse's questions regarding marijuana, once she detected "a strong odor of burnt marijuana" emanating from the car, she was justified in investigating the issue further because the smell gave her "reasonable suspicion of an independent offense" including driving under the influence, open container violations, or violations of federal law. (Ex. 1 at 2); *see Landeros*, 913 F.3d at 867; *see also Fews*, 27 Cal. App. 5th at 563.

7

**B.  Whether Gearheart Has Standing to Challenge the Vehicle Search**

The Fourth Amendment right against unreasonable searches and seizures cannot be asserted vicariously. *See United States v. Beaudion*, 979 F.3d 1092, 1097 (5th Cir. 2020). "A criminal defendant seeking suppression must show that "his own Fourth Amendment rights [were] infringed by the search [or] seizure which he seeks to challenge." *Byrd v. United States*, 584 U.S. 395, 403 (2018) (citing *Rakas v. Illinois*, 439 U.S. 128, 133 (1978)).

This principle of "Fourth Amendment standing" reflects the personal nature of a citizen's right to be secure in "their" persons, houses, papers, and effects. *See Minnesota v. Carter*, 525 U.S. 83, 92 (1998) (Scalia, J., concurring) ("The obvious meaning of the provision is that each person has the right to be secure . . . in his own person, house, papers, and effects."). Therefore, a defendant seeking to suppress evidence must show not only that the police committed an unreasonable search or seizure, but also that the search or seizure "infringed [a Fourth Amendment] interest of the defendant" himself. *Rakas*, 439 U.S. at 140.

A defendant can establish this personalized interest in one of two ways. First, he may object to the "physical intrusion of a constitutionally protected area" in which he has a property interest. *United States v. Jones*, 565 U.S. 400, 407 (2012). And second, he may object to government action that violates a "reasonable expectation of privacy . . . in the place searched." *Byrd*, 584 U.S. at 404-405. Either way, the Fourth Amendment standing inquiry is both defendant- and place-specific: it requires that a particular defendant (the suppression movant) have a property or privacy interest in a particular place (the area searched). *See United States v. Hernandez*, 647 F.3d 216, 219 (5th Cir. 2011) (holding defendant lacked standing to challenge search because he "ha[d] not demonstrated that he had 'a legitimate expectation of privacy in the invaded place'" (quoting *Rakas*, 439 U.S. at 143).

Here, the Government argues that Gearheart lacks standing to challenge the search of his brother's car because he has no possessory interest in the vehicle. (Doc. No. 21 at 8) (citing *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir. 2000). While the Court agrees that

1    Defendant has no possessory interest in the vehicle,[4] it is uncontested that the green fanny pack

2    that was searched in the back seat of the vehicle belonged to Gearheart and that it contained the

3    revolver and ammunition belonging to Gearheart that ultimately gave rise to the instant citation.

4    *See Rakas v. Illinois*, 439 U.S. 128, 148 (1978) (noting that "a possessory interest . . . in the

5    property seized" supports a legitimate expectation of privacy in particular areas of a vehicle

6    searched by officers).  Gearheart had a legitimate expectation of privacy in a piece of his own

7    luggage contained within his brother's car, and thus the Court finds he has Fourth Amendment

8    standing to challenge the reasonableness of the search as to his own property.

**C. Whether Rangers Had Probable Cause to Search the Vehicle**

10    Police may conduct a warrantless search of a vehicle if they have probable cause to

11    believe that the vehicle contains contraband.  *Carroll v. United States*, 267 U.S. 132, 162 (1925);

12    *see also United States v. Brooks*, 610 F.3d 1186, 1193 (9th Cir. 2010) ("[Police may conduct a

13    warrantless search of a vehicle if there is probable cause to believe that the vehicle contains

14    evidence of a crime . . . . 'Probable cause to search is evaluated in light of the totality of the

15    circumstances.'") (citations omitted).  As to the scope of such a search, "[i]f probable cause

16    justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle

17    and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. at

18    825.  The automobile exception "is motivated by the supposedly lower expectation of privacy

19    individuals have in their vehicles as well as the mobility of vehicles, which allows evidence

20    contained within those vehicles to be easily concealed from the police." *United States v. Camou*,

21    773 F.3d 932, 941 (9th Cir. 2014) (citations omitted).

22    While under California state law "the smell of marijuana alone no longer provides a basis

23    for probable cause," *see United States v. Vasquez*, 2021 WL 3011997, at *2 (9th Cir. July 15,

---

[4] The Court is unpersuaded by Gearheart's contention, unsupported by any authority, that because he was William's brother, they live together, and Gearheart had implicit permission to drive the Lexus, he therefore had a possessory interest in the vehicle. (Doc. No. 23 at 1). Nor does *Byrd* support Gearheart's claim that as a passenger he had a reasonable expectation of privacy in the vehicle generally; critical to the Supreme Court's reasoning in *Byrd* was the fact that Byrd was the driver and sole occupant of the vehicle when it was stopped and searched. *See Byrd*, 584 U.S. at 398-399 ("The Court now holds that, as a general rule, someone in otherwise lawful possession and control of a rental car has a reasonable expectation of privacy in it even if the rental agreement does not list him or her as an authorized driver.")

2021), the incident here occurred on federal land, and given that possession of marijuana remains a federal crime, *see Fejes v. Fed. Aviation Admin.*, 98 F.4th 1156, 1163 (9th Cir. 2024) (citing 21 U.S.C. § 812), Ranger Hesse had probable cause to believe based on the smell of burnt marijuana alone[5] that the vehicle may contain evidence of both federal and state law offenses. *See United States v. Chavez*, 2016 WL 916324, at *2 (E.D. Cal. Mar. 10, 2016) (noting that "even if defendant's actions [of growing marijuana for purported medical purposes] were in compliance with California law, they allegedly took place on federal land" and there was no evidence that "Congress intended to affect the federal government's exercise of its police powers over federal land.")

Gearheart argues that even if a search of the vehicle was justified based on the admitted possession of marijuana, the search should have ended once Ranger White found a bong with marijuana residue on it. (Doc. No. 10 at 11-13). The Court disagrees for several reasons. First, drug paraphernalia was not the object of White's search; rather it was the marijuana that William admitted was inside the car. Further, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Ross*, 456 U.S. at 825. Gearheart cites to factually distinct cases involving overbroad search warrants for weapons and child pornography, which the Court finds inapposite, to argue that the search here exceeded the scope of probable cause. (Doc. No. 10 at 12-13). The Court finds that *Ross* controls here, and Gearheart has not articulated any reason why the areas Ranger White searched and ultimately found marijuana—including the front of the car and the trunk—were not "part[s] of the vehicle . . . that may conceal the object of the search." *Ross*, 456 U.S. at 825. Nor is it otherwise evident to the Court why these are areas that Ranger White should have excluded from his search. Thus, the Court finds the scope of the search was proper.

Finally, Gearhart contends that the decriminalization of simple marijuana possession in California, various executive actions reflecting de facto decriminalization of simple possession of

---

[5] Here, William's admission that the car contained "a little bit of marijuana" also provided probable cause for a search.

10

marijuana, and scarce enforcement by federal prosecutors effectively divested the rangers of probable cause, because the smell of burnt marijuana alone does not indicate that a crime has been or is about to be committed. (Doc. No. 10 at 13-14). As Gearheart concedes, however, marijuana remains illegal under federal law, (*id*. at 14), the incident occurred on federal land, and Gearheart fails to cite any authority to support his contention that the presence of marijuana or paraphernalia on federal lands no longer supports probable cause. Nor is the Court aware of any such authority. As the Government notes, while federal prosecutors rarely prosecute marijuana offenses, this is an act of prosecutorial discretion that does not divest law enforcement of authority to investigate potential federal crimes. (Doc. No. 21 at 19).

Thus, based on the totality of the circumstances, including the admitted possession of marijuana in the vehicle and the odor of burnt marijuana, rangers had probable cause under the automobile exception to effect a search of the Lexus.

**D. Whether *Miranda* Was Triggered During Defendant's Detention**

"The procedural protections afforded by *Miranda v. Arizona*, 384 U.S. 436 (1966), are designed to secure an accused's privilege against self-incrimination and are triggered only in the event of a custodial interrogation." *United States v. Wauneka*, 770 F.2d 1434, 1438 (9th Cir. 1985). "A defendant is in custody when, based upon a review of all the pertinent facts, 'a reasonable innocent person in such circumstances would conclude that after brief questioning, he or she would not be free to leave.'" *United States v. Booth*, 669 F.2d 1231, 1235 (9th Cir. 1981).

In making this determination, courts consider factors including "(1) the language used to summon the individual, (2) the extent to which the defendant is confronted with evidence of guilt, (3) the physical surroundings of the interrogation, (4) the duration of the detention, and (5) the degree of pressure applied to detain the individual." *United States v. Crisco*, 725 F.2d 1228, 1231 (9th Cir. 1984). Meanwhile, "interrogation may be 'either express questioning or its functional equivalent,' and . . . include[s] any statements or actions 'that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Booth*, 669 F.2d 1231, 1237–38 (9th Cir.1981) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980)).

Gearheart contends here that he was in custody "if not when he was advised by Ranger Hesse about 9 minutes into the encounter that the rangers were going to search the vehicle and that 'it doesn't matter' that they do not consent—then at the latest at the 12-and-a-half-minute mark when he was ordered to exit the vehicle." (Doc. No. 10 at 16). Gearheart points to various factors as supporting a finding of custody, including the presence of five armed rangers during much of the stop, the more than hour-long duration of the encounter, and the Rangers' possession of William's and Gearheart's driver's licenses throughout the stop. (*Id.*).

Roadside questioning of a motorists detained during a traffic stop does not amount to custodial interrogation. *Berkemer v. McCarty*, 468 U.S. 420 (1984). And an investigative stop is not transformed into and arrest merely because the defendant is detained and told he is not free to leave, or his freedom is restricted during the stop. *United States v. Patterson*, 648 F.2d 625, 633 (9th Cir. 1981). Here, Ranger Hesse stated multiple times that a small amount of marijuana is "not a big deal," which tends to suggest that Defendant did not expect to be formally arrested after the search. Moreover, the stop took place along a public roadway with several passersby visible during the encounter, and there was no overt pressure used to detain Gearheart and the other adults, even though it was apparent they were not free to leave until the Rangers' investigation was complete. *See United States v. Butler*, 249 F.3d 1094, 1099 (9th Cir. 2001) (noting that a defendant was not in custody where "the defendant merely had been delayed for questioning and the search of her belongings; she was not free to go, but neither was she jailed, handcuffed, or subjected to anything besides inconvenience or delay.") (citing *U.S. v. Leasure*, 122 F.3d 837 (9th Cir. 1999). Nor does Defendant point to any evidence indicating the Rangers confronted Gearheart with evidence of his guilt of any offense, which would support a finding of custodial interrogation. *See United States v. Hudgens*, 798 F.2d 1234, 1236 (9th Cir. 1986). A review of the body worn camera footage demonstrates that there is no evidence that any of the Rangers present used coercion, threats or intimidating language to elicit incriminating information. To the extent Gearheart made any incriminating statements, these were largely not the result of express questioning or its equivalent by any of the Rangers. *See Innis*, 446 U.S. at 301 (voluntary statements made spontaneously and not in response to custodial interrogation are

not subject to suppression under *Miranda*). Considering these facts, the Court concludes that Defendant was not in custody during the traffic stop and or search of the vehicle for purposes of *Miranda*.

Even assuming arguendo that Gearheart was in custody during some portion of the stop, however, he fails to establish that he was subject to interrogation while in custody. As the Supreme Court has stated:

> Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). It is not apparent from Gearheart's briefing what interactions with the rangers constituted "express questioning or its functional equivalent" which a reasonable officer "should know are reasonably likely to elicit an incriminating response from the suspect.'" *Id.*; *Booth*, 669 F.2d at 1237–38. Defendant seeks suppression of "statements made regarding drugs or guns in the vehicles in response to the rangers' questioning." (Doc. No. 23 at 10-11). It is not apparent from a review of the body worn camera footage what interactions Gearheart is referring to or what inculpatory statements Gearheart believes should be suppressed. It is not the role of the Court to garner from the evidence submitted an argument that the rangers engaged in such a line of questions. The Court finds that a reasonable person in Gearheart's position would conclude after the formalities of the stop and search were concluded, he was free to leave. Thus, the Court finds no evidence that Gearheart was in custody for purposes of *Miranda.*

## CONCLUSION

Based upon a review of the record and evidence, the Court finds no basis to suppress the evidence obtained from the search of the vehicle or to suppress Gearheart's any statements that are reflected on the video recordings to Rangers under *Miranda*.

13

Accordingly, it is **ORDERED**:

1. Defendant Gearhearts' Motion to Suppress (Doc. No. 10) is **DENIED**.

2. Gearheart's Request for an Evidentiary Hearing (Doc. No. 10) is **DENIED**

Dated:   May 17, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE